IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHIELDMARK, INC., | ) | CASE NO: 1:12-CV-221 |
| | ) | |
| Plaintiff, | ) | JUDGE BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CREATIVE SAFETY SUPPLY, LLC, | ) | |
| *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | | |

This case is before the undersigned United States Magistrate Judge upon referral for the preparation of a Report and Recommendation on Defendant Creative Safety Supply, LLC's ("CSS") motion to amend its counterclaims and add third-party defendants and Plaintiff ShieldMark, Inc's ("ShieldMark") motion for sanctions. (Doc. Nos. 34, 45, 46, 47, 48, 49, 50.) For the reasons set forth below, the Magistrate Judge recommends CSS's motion to amend its counterclaims and add third-party defendants be GRANTED in part and DENIED in part. Specifically, it is recommended that CSS's motion be GRANTED to the extent it seeks leave to amend to assert claims other than

the inequitable conduct claim against attorney W. Scott Harders ("Harders") and the law firm Brennan, Manna & Diamond, Inc. ("Brennan Manna"), (collectively, "Putative Third-Party Defendants") and DENIED to the extent it seeks leave to add a third-party claim for inequitable conduct against the Putative Third-Party Defendants. It is further recommended that ShieldMark's motion for sanctions be DENIED.

## I. Relevant Background And Procedural History

On March 5, 2012, ShieldMark filed an amended complaint against CSS, asserting claims for patent infringement, trademark and service mark infringement, unfair competition, and deceptive trade practices. (Doc. No. 4.) Specifically, ShieldMark alleged that CSS had infringed on a patent for adhesive tape, U.S Patent No. 8,088,480 ("Adhesive Tape Patent"), that had been issued to Thomas R. Goecke in January 2012 and which Goecke had assigned to ShieldMark. (*Id*. at 2.) Further, ShieldMark alleged that CSS had infringed on ShieldMark's trademark and engaged in unfair competition and deceptive trade practices by advertising, promoting and selling adhesive tape using the "Mighty Line" trademark, which ShieldMark had registered, and by using the Internet domain name "<www.MightyLineTape.com> ("Domain Name"). (*Id*. at 3-6.)

On April 9, 2012, CSS filed its answer to the amended complaint, generally averring that it had previously distributed ShieldMark's adhesive tape under a distribution agreement between the two companies, and that ShieldMark's claims arose out of a dispute between them involving CSS's refusal to sell ShieldMark's products exclusively. (Doc. No. 10 at 1-9.) Further, CSS asserted counterclaims against ShieldMark, seeking declaratory judgment that it had not infringed on the Adhesive

Tape Patent and that the Adhesive Tape Patent was invalid. (*Id*. at 10-11.) Finally, CSS alleged that ShieldMark's obtaining of an invalid patent and threats of patent enforcement actions violated § 2 of the Sherman Act, 15 U.S.C. § 2. (*Id*. at 11-12.)

On July 2, 2012, CSS moved to amend its counterclaims and add third-party claims and defendants. (Doc. No. 34.) Specifically, CSS sought leave to: (1) assert additional details in support of its original counterclaims; (2) add claims for declaratory judgment that ShieldMark's Adhesive Tape Patent was invalid based on obviousness, a new matter asserted, and the on-sale bar; (3) name as third-party defendants Harders, who had represented Goecke and ShieldMark during the prosecution of the Adhesive Tape Patent, and Brennan Manna, which employed Harders during the prosecution of the Adhesive Tape Patent; and (4) add a claim for inequitable conduct against ShieldMark and the Putative Third-Party Defendants, based on alleged misrepresentations made by Harders during the prosecution of the Adhesive Tape Patent. (*Id*.) With respect to the claim for inequitable conduct, CSS alleged that, after several rejections of the application for the Adhesive Tape Patent, ShieldMark and the Putative Third-Party Defendants fraudulently relied on information not originally submitted with the original application to obtain approval of the Adhesive Tape Patent. (Doc. 34-1 at ¶¶ 218-54.) CSS sought an award of money damages, purportedly pursuant to 35 U.S.C. § 385, as well as fees, costs and consequential damages arising out of the inequitable conduct. (*Id*. at ¶¶ 253-54.)

On July 30, 2012, the Putative Third-Party Defendants and ShieldMark filed separate briefs in opposition to CSS's motion to amend its counterclaims and add third-party defendants. (Doc. Nos. 39, 40.) On August 9, 2012, CSS filed a memorandum in

reply to the Putative Third-Party Defendants' opposition. (Doc. No. 41.) The next day, CSS filed a memorandum in reply to ShieldMark's opposition. (Doc. No. 42.) On August 14, 2012, with leave of the Court, the Putative Third-Party Defendants filed a sur-reply to CSS's memorandum in reply. (Doc. No. 43-1.)

On September 2, 2012, ShieldMark filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, seeking sanctions against CSS and its local counsel, Ronnie Fischer, Ralph Martin, Irving B. Sugarman and Mark A. Riemer, as well as their law firms (collectively, "Local Counsel"). (Doc. 45.) On September 21, 2012, Local Counsel filed a memorandum in opposition to ShieldMark's motion for sanctions. (Doc. no. 47.) On September 24, 2012, CSS filed a memorandum in opposition to CSS's motion for sanctions. (Doc. No. 49.) On October 1, 2012, ShieldMark filed a memorandum in reply. (Doc. No. 50.)

## II. Law And Analysis

### A.    Motion to Amend

Under the circumstances of this case, Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." The decision whether to permit amendment to a complaint after an answer has been filed "is committed to the discretion of the trial court." *Jet, Inc. v. Sewage Aeration Sys.,* 165 F.3d 419, 425 (6th Cir. 1999). The Rule requires a court to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), as "the thrust of Rule 15 is . . . that cases should be tried on their merits rather than the technicalities of pleadings." *Jet, Inc.*, 165 F.3d at 425 (internal quotation marks

omitted). In determining whether to grant an amendment in this context, a court should consider, *inter alia*, whether the amendment is sought in bad faith, and the futility of the proposed amendment. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

A proposed amendment is futile where it would not withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). To survive a Rule 12(b)(6) motion, "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under *some viable legal theory*." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (emphasis added).

### 1. Proposed Third-Party Claims

Here, the Putative Third-Party Defendants and ShieldMark argue that CSS's proposed amendment to assert an inequitable conduct claim against the Putative Third-Party Defendants is futile. Specifically, the Putative Third-Party Defendants argue that CSS's proposed amendment is futile because: (1) under Ohio law, in the absence of privity or allegations of malice, an attorney is immune from liability to third parties for actions taken on behalf of a client; and (2) because the sole form of relief available in an inequitable conduct claim – the finding that the patent is unenforceable – lies against the patent holder, there can be no such claim against the patent holder's representatives. Similarly, ShieldMark argues that the proposed amendment is futile because no court has ever ruled that there is an independent cause of action against patent counsel for damages arising out of misconduct during the prosecution of a

patent.[1] Because a claim for inequitable conduct provides a remedy against only the patent holder, CSS has not identified a viable legal theory under which it can recover against the Putative Third-Party Defendants for their allegedly inequitable conduct before the PTO, and it is recommended that the Court deny CSS's motion to the extent it seeks to assert a third-party claim for inequitable conduct against the Putative Third-Party Defendants.

### a. Whether ShieldMark's Counsel Is Immune From Liability

The Putative Third-Party Defendants assert that Ohio law precludes their liability for actions taken in the course of prosecuting the Adhesive Tape Patent. It is well settled in Ohio law that "'an attorney is immune from liability to third parties arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously.'" *Scholler v. Scholler*, 462 N.E.2d 158, 163, 10 Ohio St.3d 98, 103 (Ohio 1984) (quoting *Petrey v. Simon*, 447 N.E.2d 1285, 1289, 4 Ohio St.3d 154, 158 (Ohio 1983) (Celebrezze, C.J., dissenting)). However, the Putative Third-Party Defendants

---

[1] ShieldMark also argues that there is no basis for CSS's inequitable conduct claim because, throughout the prosecution of the Adhesive Tape Patent, its counsel made proper amendments that were accepted by the United States Patent and Trademark Office ("PTO"). (Doc. 40 at 4.) This argument challenges the factual allegations set forth in CSS's counterclaims. However, in deciding whether a claim survives a Rule 12(b)(6) motion to dismiss, the Court must view the claim in the light most favorable to the party asserting it, and must take all factual allegations as true. *See, e.g, Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). Accordingly, ShieldMark's challenge to the factual basis for the inequitable conduct claim is not relevant to whether the proposed amendment is futile.

fail to explain why this Court should apply Ohio law on this issue. In its proposed amended counterclaims and third-party claims, CSS alleges that this Court has jurisdiction over its counterclaims and third-party claims under 28 U.S.C. § 1338 (granting federal district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks") and § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). CSS's inequitable conduct claim does not rely on Ohio law. Rather, it asserts that the Third-Party Defendants intentionally misled the PTO, a federal entity, *see* 35 U.S.C. § 1(a) ("The United States Patent and Trademark Office is established as an agency of the United States, within the Department of Commerce."), to obtain approval of the Adhesive Tape Patent. The Putative Third-Party Defendants provide no basis for applying a state common law immunity to a claim that arises entirely out of a federal statutory scheme. *See, e.g., Martinez v. California*, 444 U.S. 277, 284, n.8 (1980) (noting, in the context of 42 U.S.C. § 1983, that "[a] construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced").

Moreover, even if this Court were to apply Ohio common law, the Putative Third-Party Defendants would not be immune from liability as they assert. Ohio does not extend an attorney's immunity to preclude liability for malicious conduct. *See Scholler, 462 N.E.2d at 163, 10 Ohio St.3d at 103*. Ohio courts have recognized that malice

-7-

"requires a positive element of conscious wrongdoing.  This element has been termed conscious, deliberate or intentional." *Malone v. Courtyard by Marriott L.P.*, 659 N.E.2d 1242, 1247-48, 74 Ohio St.3d 440, 446 (Ohio 1996) (internal quotation marks omitted). Here, in its amended counterclaims and third-party claims, CSS alleges that the Third-Party Defendants deliberately and intentionally misled the PTO during the prosecution of the Adhesive Tape Patent, and continue to press patent enforcement suits despite knowing that the patent is not enforceable. (Doc. No. 34-1 at ¶¶ 224, 234, 235, 248, 251.)  These allegations describe conduct that is conscious, deliberate and intentional. Taking the allegations as true, this conduct qualifies as malicious under Ohio law, and the state's common law attorney immunity would not apply to preclude liability based on the facts as alleged by CSS.  *See, e.g., Simon v. Zipperstein*, 512 N.E.2d 636-38, 32 Ohio St. 3d 74, 76-77 (Ohio 1987) (noting that "special circumstances such as fraud, bad faith, collusion or other malicious conduct would justify departure from the general rule" that an attorney is immune from liability to third parties).

Further, to the extent the Putative Third-Party Defendants assert that they are immune from liability by virtue of federal common law, that argument is not well taken. Although federal courts have shielded prosecutors and judicial officers from immunity for liability from claims arising out of their official duties, *see, e.g., Imbler v. Pachtman,* 424 U.S. 409, 417-19 (1976) (finding absolute immunity for judges acting within their judicial roles); *Burns v. Reed*, 500 U.S. 478, 487 (1991) (absolute immunity for prosecutors), no federal court has extended that immunity to attorneys accused of intentional or malicious wrongdoing, *see, e.g. Tower v. Glover*, 467 U.S. 914, 921

(1984) ("[W]e conclude that public defenders have no immunity from § 1983 liability for intentional misconduct."); *U.S. Gen., Inc. v. Schroeder,* 400 F. Supp. 713, 718 (E.D. Wis. 1975) (""If the immunity to be accorded a prosecutor may fall in the showing of malice, it would seem to follow *a fortiori* that the immunity of a private attorney is not to be allowed to withstand such a charge.") Accordingly, the Putative Third-Party Defendants' argument that they are immune from liability for the wrongdoing asserted in the proposed inequitable conduct claim lacks merit.

### b. Whether Patent Counsel May Be Liable For Inequitable Conduct

It is well settled that "[a]pplicants for patents are required to conduct themselves with candor in their dealings with the PTO." *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1070 (Fed. Cir. 1992); *see also* 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with" the PTO.). Where an applicant "fails to disclose material information or submits generally false information to the PTO during prosecution," the applicant's patent "may be rendered unenforceable for inequitable conduct." *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007) (internal quotation marks omitted). Both ShieldMark and the Putative Third-Party Defendants argue that CSS's proposed inequitable conduct claim against the Putative Third-Party Defendants is futile because there is no independent cause of action against a patent holder's legal representative arising out of that representative's conduct before the PTO. CSS responds that, because an attorney has an obligation of candor and good faith before the PTO, a patent holder's counsel may be liable for

-9-

inequitable conduct.

Notably, neither CSS nor ShieldMark and the Putative Third-Party Defendants cite to any legal authority determining whether a patent holder's legal representative can be individually liable for inequitable conduct before the PTO.[2] The Putative Third-Party Defendants cite to *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 803 F. Supp. 2d 409 (E.D. Va. 2011), in which the district court denied a motion to amend to assert an inequitable conduct claim against, *inter alia*, the patent holder's counsel. In that case, however, the district court denied the motion to amend as futile because the moving party failed to make a plausible showing of the but-for materiality necessary to prevail in such a claim. *See* 803 F. Supp. 2d at 434-36. The issue of whether the patent holder's legal representative was a proper defendant was not before the court.

In support of its proposed third-party claim, CSS cites to the Court's decision denying sanctions in *Allied Machine & Engineering Corp. v. Competitive Carbide, Inc.*, No. 1:11-cv-2712 ("*Allied Machine*"), to support its argument that ShieldMark's patent counsel may be held liable for inequitable conduct before the PTO. In that patent infringement case, the defendant asserted a third-party claim for inequitable conduct against the co-inventors of record on the patent at issue. (No. 1:11-cv-2712, Doc. No. 34 at 6.) In pressing for sanctions, the third-party defendants in that case argued that,

---

[2] CSS argues that "the lack of case law stating expressly that an attorney may be sued is not persuasive. It may only indicate that such cases typically settle." (Doc. 41 at 5.) This Court finds that argument to be equally unpersuasive. The mere fact that certain claims may be brought and settled before facing any substantive challenge is not indicative of whether they are actually legally sufficient.

-10-

because they had assigned their rights as co-inventors to the plaintiff, there was no actual controversy between themselves and the defendant and, thus, the Court lacked subject matter jurisdiction over the third-party claim. (No. 1:11-cv-2712, Doc. No. 22 at 1-4) The Court denied the motion for sanctions, noting that, under the applicable case law, the two co-inventors were "appropriate objects of the inequitable conduct inquiry," because they were involved in the patent application process. (No. 1:11-cv-2712, Doc. No. 34 at 8.) According to CSS, this Court should interpret the decision in *Allied Machine* to hold that the Putative Third-Party Defendants in this case can be subject to a claim for inequitable conduct. The Putative Third-Party Defendants argue that *Allied Machine* is distinguishable from this case.

      The Court's decision in *Allied Machine* does not control the outcome of this issue in this case. Contrary to CSS's assertion, the facts of *Allied Machine* are not "on almost all fours" with this case. Rather, in *Allied Machine*, the Court was addressing a motion for sanctions under Rule 11, not a motion to amend. Thus, the Court considered the issue under the Rule 11 standard, *i.e.*, whether the defendants had a "good faith belief" in the merits of their third-party claim. (No. 1:11-cv-2712, Doc. 34 at 4.) Further, the third-party defendants in *Allied Machine* argued that, because they had assigned their rights in the patent to the plaintiff, there was no actual controversy, and, thus, the Court lacked subject matter jurisdiction over the claim. Here, neither ShieldMark nor the Putative Third-Party Defendants argue that the Court lacks subject matter jurisdiction. Finally, in *Allied Machine*, the putative third-party defendants were the co-inventors of record, not the patent holder's legal representatives.

-11-

Similarly, CSS cites to *Kothmann Enterprises, Inc. v. Trinity Industries, Inc.*, 455 F. Supp. 2d 608 (S.D. Tex. 2006) to support the merits of its third-party claim. In that case, the court observed: "In the context of an equitable conduct determination, the 'applicant' includes anyone under a duty to disclose material information and includes: the inventor, the prosecuting attorney or agent, and anyone associated with the inventor or assignee who is involved in the preparation or prosecution of the application." 455 F. Supp. 2d at 617. This statement, however, does not support CSS's argument that a patent holder's legal counsel is an appropriate defendant in an inequitable conduct claim. Rather, it merely reiterates well-established authority that the conduct of parties other than the patent holder can be considered by a court in deciding whether the patent is enforceable. *See, e,g.,* 37 C.F.R. § 1.56(c) (requiring "good faith and candor" from "each attorney or agent who prepares or prosecutes the application"); *Nisus Corp. v. Perma-Chink Sys., Inc.*, 421 F. Supp. 2d 1084 (E.D. Tenn. 2006) (examining the conduct of the patent holder's counsel in deciding, after a bench trial, that the plaintiff had engaged in inequitable conduct and, thus, its patent was unenforceable); *Bristol-Myers Squibb Co. v. Rhone-Poulence Rorer, Inc.*, 326 F.3d 1226, 1230-21 (Fed. Cir. 2003) (considering the conduct of the patent holder's patent agent in deciding that the patent holder engaged in inequitable conduct).

Further, CSS argues that the Putative Third-Party Defendants are liable for inequitable misconduct under 35 U.S.C. § 285. That statute, however, provides that, "in exceptional cases," a court "may award reasonable attorney fees to the prevailing party." It does not create a right of action against a patent holder's counsel.

-12-

Given the dearth of case law on the issue, this Court examines the nature of the claim asserted by CSS to determine whether it would survive a motion to dismiss under Rule 12(b)(6). "Inequitable conduct is an equitable defense to a patent infringement case that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). In other words, the remedy for inequitable conduct is the "unenforceability of the entire patent." *Id.* at 1287; *General Electro Musical Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408 (Fed. Cir. 1994) ("The concept of inequitable conduct in patent procurement derives from the equitable doctrine of unclean hands: that a person who obtains a patent by intentionally misleading the PTO cannot enforce the patent.") (internal quotation marks omitted). By its nature, this remedy – barring enforcement of the patent – lies against only the patent holder, as enforcement of a particular patent is the right of the patent holder, or patentee. *See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."). There is no remedy against other parties.

CSS asserts that "a counterclaim for inequitable conduct is an appropriate way to hold the attorneys accountable" for misconduct before the PTO. (Doc. No. 41 at 5.) It does not, however, explain how such a claim actually affects a patent holder's counsel, as the ultimate remedy nullifies a right exclusive to the patent holder.[3] Although an

---

[3]  Further, the statutory scheme at issue provides a mechanism for ensuring that attorneys who practice before the PTO obey the relevant regulations, including the obligation of good faith and candor. Under 35 U.S.C. § 32, the director of the PTO may "suspend or exclude . . . from further practice" before the PTO" an attorney who is "shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations . . ."

attorney's inequitable conduct may result in other negative consequences – disciplinary or malpractice actions – none of those may be accomplished by a claim for inequitable conduct. Because there can be no remedy against a patent holder's attorney for inequitable conduct before the PTO, CSS has identified no "viable legal theory" under which it can "sustain recovery" against the Putative Third-party Defendants in this context. *Mezibov*, 411 F.3d at 716. Given this, CSS's third-party claim for inequitable conduct against the Putative Third-Party Defendants would not survive a motion to dismiss, and the proposed amendment is futile. Accordingly, it is recommended that CSS's motion for leave to amend be DENIED to the extent it seeks to assert a third-party claim for inequitable conduct against the Putative Third-Party Defendants.

### 2. Other Proposed Amendments to CSS's Counterclaims

Neither ShieldMark nor the Putative Third-Party Defendants oppose CSS's request for leave to amend its counterclaims by adding additional factual allegations and by asserting additional claims against ShieldMark. Given that this case is in the early stages of litigation, and that ShieldMark has not alleged that it would be prejudiced by the amendments other than the proposed third-party claims against its counsel, *see Hageman*, 486 F.2d at 484, it is recommended that CSS's motion to amend its counterclaims be GRANTED to the extent it seeks leave to amend to assert claims other than the inequitable conduct claim against the Putative Third-Party Defendants.

### B. ShieldMark's Motion for Sanctions

Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper[,] an attorney . . . certifies that to the best of the person's

>    knowledge, information, and belief, formed after an inquiry
>    reasonable under the circumstances:
>
>    (1) it is not being presented for any improper purpose, such as to
>    harass, cause unnecessary delay or needlessly increase the cost
>    of litigation;
>
>    (2) the claims, defenses and other legal contentions are warranted
>    by existing law or by a nonfrivolous argument for extending,
>    modifying, or reversing existing law or for establishing new law;
>
>    (3) the factual contentions have evidentiary support or, if
>    specifically so identified, will likely have evidentiary support after a
>    reasonable opportunity for further investigation or discovery[.]

Further, "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). The standard for considering a request for Rule 11 sanctions is "one of reasonableness under the circumstances," as the rule "stresses the need for some pre[-]filing inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." *Albright v. Upjohn Co.*, 788 F.2d 1217, 1221 (6th Cir. 1986).[4]

ShieldMark argues that the Court should sanction CSS and its counsel for seeking leave to amend its counterclaims to assert an inequitable conduct claim against

---

[4] In its motion for sanctions, ShieldMark also asserts, without further explanation, that "28 U.S.C. § 1927 is an additional basis to sanction Defendant's counsel." (Doc. No. 45 at 7.) Absent further argument, however, this Court should deem ShieldMark's request for sanctions under § 1927 waived. See *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")

ShieldMark and the Putative Third-Party Defendants because: (1) the inequitable conduct claim lacks merit; and (2) there is no basis for bringing an inequitable conduct claim against a patent holder's attorney and, thus, the proposed third-party claim is frivolous.  (Doc. No. 45.)  CSS argues that sanctions are not appropriate in this case because: (1) its proposed inequitable conduct claim describes actionable conduct by ShieldMark and the Putative Third-Party Defendants; and (2) an attorney can be liable for inequitable conduct before the PTO.  (Doc. No. 49.)[5]

ShieldMark's first basis for requesting Rule 11 sanctions lacks merit.  Rather than pointing to any legal or technical deficiencies in CSS's proposed inequitable conduct claim, ShieldMark takes issue with CSS's characterization of ShieldMark's conduct before the PTO.  Where CSS asserts that ShieldMark's counsel misrepresented and failed to disclose material information to the PTO, ShieldMark asserts that its counsel properly presented meritorious argument in support of the application for the Adhesive Tape Patent.  The mere fact that ShieldMark disagrees with CSS's description of its counsel's conduct before the PTO does not, without more, mean that CSS's request for leave to assert the inequitable conduct claim was unsupported by existing law or evidence.  Accordingly, the request for leave to amend to assert an inequitable conduct claim is not sanctionable conduct.

ShieldMark's second basis for requesting sanctions – that a patent holder's

---

[5]  Local counsel for CSS correctly argues that, because they did not sign the motion for leave to amend or any of the responses in support, it cannot be liable for Rule 11 sanctions arising out of the motion.  *See Veillon v. Exploration Servs*, 876 F.2d 1197, 1201 (5th Cir. 1989).  In fact, the motion to amend and the proposed amended counterclaims are signed by only one attorney, Ronnie Fischer.  (Doc. Nos. 34, 34-1.)

counsel cannot be liable for inequitable conduct before the PTO and, thus, the proposed third-party claim is frivolous – is a closer question.  As discussed herein, this Court recommends that the third-party claim against the Putative Third-Party Defendants be denied as futile, on the basis that, because there is no remedy against a patent holder's counsel for inequitable conduct, the claim asserted against the Putative Third-Party Defendants would not survive a motion to dismiss.  That is not to say, however, that CSS relied on frivolous arguments for asserting the claim.  Given the lack of case law discussing the issue, there is no basis for concluding that CSS should have known that its proposed third-party claim lacked a basis in law, *see, e.g., Royal Oak Entm't, LLC v. City of Royal Oak*, 316 F. App'x 482 (6th Cir. 2009) (imposing sanctions where the plaintiff's counsel should have been aware that, under Michigan law, the plaintiffs lacked standing to assert substantive and procedural due process claims), or that CSS lacked a nonfrivolous argument for establishing new law.  The mere fact that this Court disagreed with CSS's interpretation of the law does not mean CSS's request for leave to amend violated Rule 11's prohibitions against frivolous filings.  Accordingly, it is recommended that ShieldMark's motion for sanctions be DENIED.

### III. Conclusion

For the foregoing reasons, the Magistrate Judge recommends that CSS's motion to amend its counterclaims and add third-party defendants be GRANTED in part and DENIED in part.  Specifically, it is recommended that CSS's motion be GRANTED to the extent it seeks leave to amend to assert claims other than the inequitable conduct claim against the Putative Third-Party Defendants and DENIED to the extent it seeks

leave to add a third-party claim for inequitable conduct against the Putative Third-Party Defendants. It is further recommended that ShieldMark's motion for sanctions be DENIED.

s/ <i>Nancy A. Vecchiarelli</i><br>U.S. MAGISTRATE JUDGE

Date: October 9, 2012

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).