UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SHIELDMARK, INC.,** | ) | CASE NO. 1:12CV221 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **CREATIVE SAFETY SUPPLY, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #72) of Plaintiff, Shieldmark, Inc., for Summary Judgment as to liability on Counts III, IV and V of Plaintiff's Second Amended Complaint. For the following reasons, the Motion is granted. Damages (if any), injunctive relief and potential attorney fees remain before the Court for future consideration.

**I. RELEVANT FACTS**

On March 12, 2013, Plaintiff, Shieldmark, Inc., filed a Second Amended Complaint against Defendant, Creative Safety Supply, LLC ("CSS"), alleging Patent Infringement (Counts I and II), Trademark and Service Mark Infringement (Count III), Unfair Competition

(Count IV), and Deceptive Trade Practices (Count V).  Plaintiff alleges that, on May 13, 2008, it registered the mark "Mighty Line" as a trademark for adhesive tape under Registration No. 3,428,461.  Plaintiff further alleges that it has used the "Mighty Line" mark in commerce since May 1, 2006; and that it advertises, promotes and sells adhesive tape as an alternative to painted floor lines in industrial environments under the internet domain name <www.MightyLine.net>.  CSS had been a distributor of "Mighty Line" adhesive tape, manufactured by Shieldmark, since February 2008.  CSS used the domain name <www.MightyLineTape.com>.  While serving as a distributor for Shieldmark, CSS allegedly manufactured a similar adhesive tape for floor marking applications under the names "SafetyTac" and SafetyTac Lean."  CSS allegedly used the domain name <www.MightyLineTape.com> to advertise and sell its own product and Plaintiff's.

According to the Affidavit of CSS (ECF DKT #15-2), as well as CSS's Answer to the Second Amended Complaint (ECF DKT #67), the following facts are undisputed:

On January 31, 2012, a CSS representative and Shieldmark's president, Thomas R. Goecke, had a telephone conversation about their distributorship arrangement.  (The parties admit they had no written distributorship agreement).  At that time, Plaintiff asked CSS to stop using the website name "MightyLineTape.com."  CSS contends that it "obliged Plaintiff's request" and "did a 301 re-direct of the URL "MightyLineTape.com" to the new URL "FacilityFloorMarking.com" (its own website).  (ECF DKT #67 at p.5).  CSS asserts, that as Shieldmark's distributor, it "continued to only sell Plaintiff's products on that website."  *Id*.  On February 27, 2012, Shieldmark demanded, in an email, that CSS remove the "Mighty Line" name and all product photographs from any CSS website, since the parties

were unable to reach an agreement on a continuing distributorship.  CSS admits that the 301 re-direct of "MightyLineTape.com" to "FacilityFloorMarking.com" was "*overlooked* for an 11 day period from February 27th to March 9th." *Id.* (Emphasis added).  However, on March 9, 2012, CSS did delete "MightyLineTape.com" from its account; and CSS no longer owns the domain name.

In its Second Amended Complaint, Plaintiff Shieldmark alleges that CSS's use of the "Mighty Line" mark and the domain name, as described above, is infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) and at common law; constitutes a false designation of origin within the meaning of § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1) and unfair competition at common law; and is a deceptive trade practice in violation of Ohio Revised Code Section 4165.02.

## II. LAW AND ANALYSIS

**Summary Judgment Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing*

*Dairy*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*., 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986). Irrelevant or unnecessary factual disputes do not create a genuine issue of material fact. *Anderson*, 477 U.S. at 248. The focus of the inquiry is whether the party bearing the burden of proof has presented a jury question as to *each element* of its case. *Celotex*, 477 U.S. at 322 (emphasis added). The non-moving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A non-moving party must show more than a "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Trademark Infringement**

15 U.S.C. § 1114 of the Lanham Act states in pertinent part:

Any person who shall, without the consent of the registrant-
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive [,].... shall be liable in a civil action by the registrant[.]
(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or

>advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.
>15 U.S.C. § 1114(1).

"To establish liability for trademark infringement under section 1114, the trademark registrant must show: (1) that it owns a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there was a likelihood of consumer confusion." (citations omitted). *Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.*, 363 F.Supp.2d 952, 957 (S.D.Ohio 2005). "The registrant does not need to prove intent under this section." (citation omitted). *Id*.

In the instant matter, Shieldmark has satisfied this three-part showing. First, CSS admits that Shieldmark registered the mark "Mighty Line" with the U.S. Patent and Trademark Office as a trademark for adhesive tape under No. 3,428,461. (Answer, ECF DKT #67 at 6).

Second, CSS indisputably used Shieldmark's mark in commerce without consent. CSS acknowledges that Goecke asked CSS to stop using the website name "MightyLineTape.com" on January 31, 2012; but, instead, CSS did a 301 re-direct of that website to "FacilityFloorMarking.com" (its own website) and continued to sell Mighty Line products. *Id*. Further, despite the February 27, 2012 email request from Shieldmark to "discontinue our Mighty Line and Mighty Glow trade names on any of your many websites," CSS *overlooked* the website re-direct for eleven days – finally deleting "MightyLineTape.com" from its account on March 9, 2012. *Id*.

Third, "[a]s always, the touchstone [of trademark infringement] will be the likelihood of consumer confusion." *Rock & Roll Hall of Fame & Museum v. Gentile Productions*, 134

F.3d 749, 756 (6th Cir.1998). Courts consider several factors to determine likelihood of confusion: (1) strength of the senior mark; (2) relatedness of the parties' goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of product lines. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir.2000). These factors are not applied with "mathematical precision;" but they provide a guide for deciding whether confusion likely exists. *Homeowners Group v. Home Mktg. Specialist, Inc.*, 931 F.2d 1100, 1107 (6th Cir.1991).

The "Mighty Line" trademark is a strong mark. Since 2006, Shieldmark has continuously used "Mighty Line" in the United States on, or in connection with, its adhesive tape products. (Goecke Declaration, ECF DKT #72-1 at ¶9).

Both Shieldmark and CSS market the same goods and services, i.e., adhesive floor tape that serves as an alternative to painted floor lines for use in industrial environments. (CSS Affidavit, ECF DKT #73-2 at ¶12; Goecke Declaration, ECF DKT #72-1 at ¶13).

The phrase "Mighty Line" in CSS's domain name <www.MightyLineTape.com> is identical to the senior, registered mark held by Shieldmark. The only difference being the addition of the generic name of the goods, i.e., tape.

Shieldmark and CSS sell their respective adhesive tapes through the same marketing channels — over the internet. Shieldmark utilizes distributors, while CSS has direct consumer sales. (CSS Affidavit, ECF DKT #73-2 at ¶6).

Actual confusion is "obviously the most probative proof of the likelihood of confusion." *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642,

648 (6th Cir.1982). However, its absence is not fatal to Plaintiff's recovery if there is enough evidence of other factors for the fact-finder to reasonably conclude that Defendant's use of the mark is likely to confuse consumers. That is the situation here.

The likelihood of confusion increases when goods are marketed such that buyers are apt to believe that the goods come from the same source, or are connected with, or sponsored by a common company. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 516 (6th Cir.2007). CSS was a distributor of "Mighty Line" adhesive tape, manufactured by Shieldmark, from February of 2008 to February of 2012. (Goecke Declaration, ECF DKT #72-1 at ¶11; CSS Affidavit, ECF DKT #73-2 at ¶¶ 4 & 21). The creation of the re-direct of <www.MightyLineTape.com> to CSS's own website FacilityFloorMarking.com, in conjunction with the parties' somewhat lengthy distributorship relationship, likely misled purchasers into thinking the websites and the goods came from, were connected with, or were sponsored by the same company.

It is not relevant that CSS harbored no malice and intended to comply by taking down the offending website. CSS neglected to fully do so for a period of at least eleven days. Intent is not a required element of trademark infringement. *Abercrombie*, 363 F.Supp.2d at 957. Moreover, the statute, 15 U.S.C. § 1114, does not mention a time frame which is necessary for a violation, nor does it set forth a time frame in which the infringement may be cured.

Also, significantly, though the offending conduct has ceased, Shieldmark's claims against CSS are not rendered moot. Without reaching the merits of Shieldmark's Prayer for Relief, the Court finds that the voluntary cessation of the use of the "Mighty Line" mark by

-7-

CSS does not negate the viability of a prospective injunction or the potential for damages suffered from the prior infringing use of the mark.

In conclusion, whether or not CSS promised to stop using Plaintiff's mark, but "overlooked" the website re-direct for only eleven days, there is no genuine issue of material fact that CSS used the registered "Mighty Line" mark in commerce (by way of the internet), without Shieldmark's consent, for a measurable period of time, such that confusion would likely result among consumers of industrial-purpose floor marking adhesive tape.

**Unfair Competition and Ohio Deceptive Trade Practices Act Violations**

The Court finds that the analysis of liability under Shieldmark's Counts IV and V is the same as that for the Count III claim of Trademark Infringement, because "likelihood of confusion" is essential to all the Counts.

A claim of unfair competition, under 15 U.S.C. § 1125(a)(1) arises where one:

on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is ***likely to cause confusion***, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. (Emphasis added).

–and–

Ohio Revised Code Section 4165.02 provides in part:

a person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following: (1) passes off goods or services as those of another; (2) causes ***likelihood of confusion*** or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; or (3) causes ***likelihood of confusion*** or misunderstanding as to affiliation, connection, or association with, or certification by, another. (Emphasis added).
The Court's analysis under the Lanham Act for Trademark Infringement, *supra*, also

addresses Shieldmark's claims of Unfair Competition under Section 1125(a) and under common law, as well as violation of the Ohio Deceptive Trade Practices Act. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc*., 78 F.3d 1111, 1122-23 (6th Cir.1996); *Procter & Gamble Co. v. Georgia-Pacific Consumer Prods. LP*, No. 1:09-cv-318, 2009 WL 2407764, at *3 (S.D.Ohio Aug. 3, 2009).

Thus, CSS's undisputed conduct, involving the use of the term "Mighty Line" on its website and in its domain name, was likely to cause confusion as to the source, origin, approval, affiliation, or association of products it was marketing – namely industrial-purpose floor marking adhesive tape.

### III. CONCLUSION

For all these reasons, Plaintiff's Motion (ECF DKT #72) for Summary Judgment as to liability on Counts III, IV and V of Plaintiff's Second Amended Complaint is granted. Damages (if any), injunctive relief and potential attorney fees remain before the Court for future consideration.

**IT IS SO ORDERED.**

                                            **s/ Christopher A. Boyko**
                                            **CHRISTOPHER A. BOYKO**
                                            **United States District Judge**

**Dated: March 19, 2014**